# 18-1872

(Lead Case No. 18-1702)

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

KRISTIN DIABLE, TAMARA DEARING, TRACEY SILVERMAN,
PHYNJUAR SAUNDERS-THOMAS, ANDREW PALEY, WATSON MUSIC
GROUP, LLP, DM RECORDS, INC. & KINGFISH MUSIC GROUP, INC.

*Objectors-Appellants,*

v.

MELISSA FERRICK, JACO PASTORIUS, INC. & GERENCIA 360
PUBLISHING, INC.,

*Plaintiffs-Appellees,*

SPOTIFY USA, INC.,

*Defendant-Appellee.*

---

On appeal from the United States District Court for the
Southern District of New York, No. 16-cv-8412, Hon. Alison J. Nathan

---

## BRIEF IN OPPOSITION TO MOTION TO DISMISS APPEAL OF
## WATSON MUSIC GROUP, LLC, DM RECORDS, INC.,
## & KINGFISH MUSIC GROUP, INC.

---

Seth P. Robert
BROWN ROBERT, LLP
150 N. Federal Highway, Suite 200
Fort Lauderdale, FL 33301
Telephone: 954-832-9400
*Attorneys for Objectors-Appellants Watson
Music Group, Inc., DM Records, Inc., &
Kingfish Music Group, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Watson Music Group, LLC, DM Records, Inc., and Kingfish Music Group, Inc. (each a private non-governmental party), certifies that each of them do not have a parent corporation or any publicly held corporation owning 10% or more of it stock.  In addition, Watson Music Group, LLC, DM Records, Inc., and Kingfish Music Group, Inc. state that each of them do not have any subsidiaries, conglomerates, affiliates, or other identifiable related legal entities with a financial interest in the outcome of this case.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................... iii

TABLE OF AUTHORITIES ........................................................................ v

APPELLANTS' BRIEF IN OPPOSITION ........................................................ 1

PRELIMINARY STATEMENT ..................................................................... 1

ARGUMENT ........................................................................................... 4

    A. The Copyright Owners' Objections Before The District
       Court Were Submitted In A Timely Manner ........................................... 4

    B. The District Court Improperly Failed To Consider
       The Objections of The Copyright Owners ............................................ 12

        1. The Assets Of The Copyright Owners Were
          Covered By An Automatic Stay Imposed In A
          Previously Filed Bankruptcy Proceeding During The
          Entire Period of Time Claimed By the Class Action
          Proponents For Raising Objections ......................................... 12

        2. An Appeal By Objectors Such As The Copyright
          Owners Is The Only Way To Protect Against An
          Unfair Settlement Crafted By The Class Settlement
          Proponents Who Now Attempt To Dismiss This Appeal .......... 19

            *i.*   *The Class Action Settlement Enables The*
                *Infringer To Benefit From Its Intentional*
                *Infringement of Copyrights By Granting*
                *It A Future License* ........................................... 19

iii

ii. *The Settlement Fails To Address The Statutory Damages Remedy For Infringement Including Intentional, Willful Infringement Of Copyrights By The Infringer* ................................... 20

CONCLUSION ....................................................................................... 23

iv

## TABLE OF AUTHORITIES

**Cases**

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) ..................................................1-4, 10-11

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ............................................. 1

*In re Doctors Health, Inc.*, 2008 WL 8889901 (D. Md. Mar. 28, 2008) .............. 18

*In re Santangelo*, 325 B.R. 874 (M.D. Fla. Bankr. 2005) ................................... 18

*Martin-Trigona v. Champion Fed. Sav. & Loan, Ass'n*,
    892 F.2d 575 (7th Cir. 1989) ........................................................................17-18

*Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513 (2d Cir. 1998) ............. 17

*Parker v. Time Warner Entertainment Co., L.P.*,
    331 F.3d 13 (2d Cir. 2003) ............................................................................. 22

*Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982) .................................... 3

*SEC v. Brennan*, 230 F.3d 65 (2d Cir. 2000) ...................................................... 13

*Smith v. Bayer Corp.*, 131 S.Ct. 2368 (2011) ...................................................... 1

*The Authors Guild v. Google, Inc.*, 770 F.Supp.2d 666 (S.D.N.Y. 2011) .......19-20

*Thomas v. Blue Cross and Blue Shield Ass'n*,
    333 Fed. Appx. 414 (11th Cir. May 28, 2009) ...............................................16-17

## Constitution, Statutes, and Rules

U.S. Const. art. I, § 8, cl. 8 ..................................................................... 22

11 U.S.C. § 362 ............................................................................... 13,18

11 U.S.C. § 362(a)(3) ....................................................................... 15-16

11 U.S.C. § 362(c)(3) .......................................................................... 13

17 U.S.C. § 201(e) ............................................................................. 19

17 U.S.C. 501 .................................................................................... 20

17 U.S.C. 504(c)(1) .......................................................................... 20-21

17 U.S.C. 504(c)(2) ............................................................................ 22

Fed. R. Civ. P. 6(b)(1)(B) ................................................................... 12

## Articles

Emery G. Lee III, et al., "Impact of the Class Action Fairness Act
on the Federal Courts" 2 (Federal Judicial Center 2008) ...................................... 2

**APPELLANTS' BRIEF IN OPPOSITION**

Pursuant to Federal Rule of Appellate Procedure 27 and Local Rule 27.1, the Objectors-Appellants Watson Music Group, LLC, DM Records, Inc., and Kingfish Music Group, Inc. (collectively, the "Copyright Owners") respectfully submit this opposition to the motion to dismiss their appeal filed by the Plaintiffs-Appellees Melissa Ferrick, Jaco Pastorius, Inc. & Gerencia 360 Publishing, Inc. (collectively, the "Class Plaintiffs") and the Defendant-Appellee Spotify USA, Inc. (the "Infringer") (the Class Plaintiffs and Infringer are collectively referred to herein as the "Class Settlement Proponents").

**PRELIMINARY STATEMENT**

The interplay between proponents of a class action settlement and parties who object to such a settlement was articulated by the Seventh Circuit in *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), a case which ultimately reversed the approval of a class action settlement. The court explained that "members of the class are more like beneficiaries than like parties; for although they are authorized to appeal from an adverse judgment . . . they have no control over class counsel. *Id.* at 719 (citing *Smith v. Bayer Corp.*, 131 S.Ct. 2368, 2379 (2011); *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002)). "Class actions are the brainchildren of the lawyers who specialize in prosecuting such actions, and in picking class

1

representatives they have no incentive to select persons capable or desirous of monitoring the lawyers' conduct of the litigation." *Id.* at 719-20.

While a high percentage of lawsuits are settled, the *Eubank* opinion cited "a study of certified class actions in federal court in a two-year period (2005 to 2007) found that *all* 30 such actions had been settled." *Id.* at 720 (citing Emery G. Lee III, et al., "Impact of the Class Action Fairness Act on the Federal Courts" 2, 11 (Federal Judicial Center 2008) (emphasis in original)). The danger recognized by the Seventh Circuit and other courts is that these class action settlements may be driven by the interests of class counsel and the defendant, which may be facing tremendous potential liability in the absence of a settlement, and may be at odds with members of the class. *Id.*

> Fortunately, the settlement, including the amount of attorneys' fees to award to class counsel, must be approved by the district judge presiding over the case; unfortunately American judges are accustomed to presiding over adversary proceedings. They expect the clash of the adversaries to generate the information that the judge needs to decide the case. And so when a judge is being urged by both adversaries to approve the class action settlement that they've negotiated, [the judge] is at a disadvantage in evaluating the fairness of the settlement to the class. . .

*Id.* "Enter the objectors. Members of the class who smell a rat can object to approval of the settlement." *Id.* The class action settlement ultimately reversed in

*Eubank* was found to be "inequitable – even scandalous" and "underscore[ed] the importance both of objectors (for they are the appellants in this case – without them there would have been no appellate challenge to the settlement) and of intense judicial scrutiny of proposed class action settlements." *Id.* at 721*; see also Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir. 1982) (in class action settlements "certain interests may be wrongfully compromised, betrayed, or 'sold out' without drawing the attention of the court." (citation omitted)).

In this case, as will be shown below, the Class Settlement Proponents are attempting to deprive the Copyright Owners of their opportunity for appellate review of a decision and subsequent judgment imposing settlement terms upon them under which the intellectual property rights of the Copyright Owners will be effected forever. The Copyright Owners are among the very few guardians who affirmatively requested that this Court review and seriously consider the settlement of this apparently willful infringement of tens of thousands of songs, including at least 270 owned by the Copyright Owners. In the absence of meaningful appellate review the ability of the Class Plaintiffs and the Infringer to construct a settlement and have it approved by the district court will go unchecked. Indeed, a class had not even been certified at the time the Class Plaintiff and the Infringer reached a settlement [DE 177, at 2-3] and was not certified until the district court

3

simultaneously certified the class and approved the settlement on May 22, 2018 [DE 418, at 1], <u>after</u> the Copyright Owners lodged their objections.

### ARGUMENT

### A. The Copyright Owners' Objections Before The District Court Were Submitted In A Timely Manner

The United States Supreme Court in *Devlin v. Scardelletti*, 536 U.S. 1 (2002), addressed a situation in which the Fourth Circuit Court of Appeals dismissed the appeal of a nonnamed class member based on a finding that he lacked standing due to the denial of his motion to intervene, despite the fact that he objected at the fairness hearing. *Id.* at 6. In reversing the Fourth Circuit, the Supreme Court held that "nonnamed class members like petitioner who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." *Id.* at 14. What does it mean to have objected in a timely manner to the approval of a class action settlement? In this case, the Class Settlement Proponents take the position that the Copyright Owners had to raise their objection in writing prior to the September 12, 2017 deadline imposed by the district court for submitting objections and indicating their intention to appear at the December 1, 2017 fairness hearing. [DE 67-1, at 1-2]. This September 11, 2017 date was not one independently selected by the district court, it was the date contained within the class action settlement

4

agreement submitted to the district court by the Class Settlement Proponents [DE 67-1, at 4].

There are no Federal rules of procedure establishing a hard "deadline" for objections to have been made in a "timely manner." Indeed, in this case the submission of materials to the Court in connection with the "fairness hearing" went on for <u>months</u> after the December 1, 2017 hearing.

1. On December 15, 2017, the district court issued an order requiring counsel for the Class Settlement Proponents and the Wixen Music class members to submit a joint letter responding to certain questions from the Court regarding an extended opt-out period for certain class members and the role of the district court in evaluating claim disputes. The district court directed the response to be filed on or before December 29, 2017 [DE 361]. Counsel for the Class Settlement Proponents jointly requested an extension of this deadline until January 5, 2018 [DE 366].

2. On December 29, 2017, counsel for the Infringer filed a motion to clarify class composition in connection with the Wixen Music class members [DE 369-71].

3. The joint brief responding to the Court's prior questions was filed on

5

January 5, 2018 [DE 373].

4. On January 30, 2018 counsel for the Copyright Owners filed a Notice of Appearance [DE 382], together with a Letter to the district court addressing the objections of the Copyright Owners to the settlement and their desire to opt out of the class action [DE 383]. In particular this letter raised the fact that the Copyright Owners had not received actual notice of any purported class membership, that the Copyright Owners join in the documents filed in opposition to the class action settlement, and that the Copyright Owners object to their inclusion in the class for many reasons including the lack of notice, short purported notice period, impact of a bankruptcy proceeding in Florida through which certain rights were transferred to the Copyright Owners. Id. This was months before the submissions were complete and the district court issued its ruling.

5. On January 31, 2018, the district court issued a further Order regarding a supplemental notice period for the Wixen Music clients and to have counsel for the Class Settlement Proponents advise the district court about whether the appointment of a Special Master was appropriate.

6. On February 2, 2018, counsel for the Copyright Owners submitted a

further Letter to the district court responding to arguments raised by counsel for the Class Settlement Proponents and addressing the objections of the Copyright Owners to the class action settlement and their desire to opt-out of this class action [DE 387]. The Copyright Owners reiterated the fact that during the entire time the below action was pending, including the entire period of the opt-out process, the copyrighted songs now owned by Watson Music were assets of a bankruptcy proceeding pending in the Southern District of Florida and therefore subject to an automatic stay preventing the dissipation of such assets. The Copyright Owners asserted that such a circumstance serves to maintain the status quo with respect to the assets of the debtor (DM Records, Inc.) until such time as the Bankruptcy Court determines what to do with such assets. This is a critical issue which sets the Copyright Owners apart from other class members, as well as serves as a good faith and reasonable basis for not acting within the specified opt-out period.

7. A joint response to the January 31, 2018 Order regarding the supplemental Wixen Music class action notice period was submitted on February 7, 2018 by counsel for the Class Settlement Proponents [DE

7

389].

8. On February 8, 2018, counsel for the Copyright Owners submitted a response in opposition to the motion for final approval of the class action settlement [DE 391].

9. On February 13, 2018 the district court issued an Order approving the supplemental notice to be provided to the Wixen Music class members which required supplemental notices to be prepared within seven (7) days, mailed within the next ten (10) days, and provide that the recipients would have to make a decision regarding class membership within the thirty (30) days following the mailing date [DE 392].

10. The opt-out period for the Wixen Music class members was reopened through the end of March 2018.

11. On May 18, 2018, counsel for the Class Plaintiffs submitted additional documents in further support of the class action settlement [DE 409-411].

12. Ultimately, on May 22, 2018, the district court entered its Memorandum Opinion and Order certifying the class and simultaneously approving the class action settlement [DE 418], together with the Order Awarding Fees and Expenses [DE 419], and the Order

8

and Final Judgment Approving Class Action Settlement [DE 420].

The Memorandum Opinion and Order addressed the actions by counsel for the Copyright Owners in a section titled "Objections by Watson Music, DM Records, and Kingfish Music" in which the Court stated as follows:

> On January 30, 2018, Watson Music Group, LLC, DM Records, Inc. and Kingfish Music Group, Inc. submitted a letter indicating that they had not received notice of any purported class membership and requesting an opportunity to raise objections both to being included in the class and to the proposed settlement. See Dkt. No. 383.

> As discussed, the notice that was provided satisfied the requirements of Rule 23 and due process. Accordingly, the Court declines to provide an additional opportunity for the three entities to file requests for exclusion or objections.

DE 418, at 14. This section of the ruling immediately followed a section addressing the Wixen Music class members. The Copyright Owners were clearly aggrieved by the actions of the district court in connection with their submission to the district court as well as the approval of the settlement agreement. On June 20, 2018, the Copyright Owners filed a Notice of Appeal to this Court [DE 426].

Thereafter, on June 25, 2018 counsel for the Copyright Owners submitted a request to the district court to correct the docket to reflect that DM Records, Inc. and Kingfish Music Group, Inc. filed objections in the above-referenced matter in

9

addition to Watson Music Group, LLP. [DE 436]. The Court thereafter issued a subsequent Order stating as follows:

> On June 25, 2018, the Court received a letter from Watson Music Group, LLC, DM Records, Inc. and Kingfish Music Group, Inc. requesting that the Court Docket be changed to reflect that the three entities filed objections in this matter. See Dkt. No. 436. The Court previously declined to provide the entities with an additional opportunity to file requests for exclusion or objection. See Dkt. No. 418, at 14.
>
> <u>To the extent that changes are required to the Court docket to allow the entities to pursue an appeal of this determination, the Clerk of the Court shall make such changes.</u>

DE 437 (emphasis added). The Order directed that district court clerk make the appropriate changes to the court docket to reflect the fact that due to the district court's adverse ruling against the Copyright Owners, the Copyright Owners are of the type who may properly take an appeal to the Second Circuit of the adverse determination made by the district court.

This is consistent with language of the Supreme Court in the *Devlin* case, when it addressed a very narrow interpretation of standing proffered by the Government in that case:

> According to the Government, intervention is the method contemplated under the rules for nonnamed class members to gain the right to participate in class action proceedings. We disagree. Just as class action procedure

10

> allows nonnamed class members to object to a settlement at the fairness hearing without first intervening . . . *it should similarly allow them to appeal the District Court's decision to disregard their objections.* Moreover, no federal statute or procedural rule directly addresses the question of who may appeal from approval of class action settlements, while the right to appeal from an action that finally disposes of one's rights has a statutory basis. 28 U.S.C. § 1291.

*Devlin*, 536 U.S. at 14 (emphasis added). While *Devlin* addressed the standing of a nonnamed class member who objected at the fairness hearing, as opposed to the Copyright Owners here who raised their objections during the period of time when the district court was still evaluating the fairness of the settlement (with enough time for the district court to have included the Copyright Owners by name in its ultimate ruling), such is a distinction without a difference.

The district court in following the dictates in *Devlin* affirmatively recognized that the Copyright Owners are allowed to seek appellate review of the district court's rulings as to them [DE 437]. Indeed, as shown above, in this case, the briefing, questions posed by the Court, further opt out period for certain class members, and subsequent approval of the class and settlement all occurred during and after the time when the Copyright Owners submitted their objection to the district court. The circuit court cases cited by the Class Settlement Proponents in support of the waiver argument do not address objections filed under such

11

circumstances. *See* DE 67-1, at 9-11. In the context of this case the objection was submitted in a timely manner for purposes of affording the Copyright Owners the opportunity to seek appellate review of the adverse determinations made by the district court. Therefore, these Copyright Owners have standing to pursue their appeal.

## B. The District Court Improperly Failed To Consider The Objections of The Copyright Owners

The Class Settlement Proponents attempt to argue the merits of the appellate issues under the umbrella of this motion by claiming that the district court properly rejected the filings of the Copyright Owners because they failed to demonstrate "excusable neglect" under the requirements of Fed. R. Civ. P. 6(b)(1)(B) [DE 67-1, at 11]. Without prejudice to the arguments to be raised in its Appellant's Brief, the Copyright Owners respond that the action of the district court was error because the Copyright Owners demonstrated excusable neglect for purposes of raising the objections to the class action settlement and should be permitted to appeal.

### 1. The Assets Of The Copyright Owners Were Covered By An Automatic Stay Imposed In A Previously Filed Bankruptcy Proceeding During The Entire Period of Time Claimed By The Class Settlement Proponents For Raising Objections

On November 19, 2015 DM Records, Inc. ("DM Records") filed a chapter 11 proceeding in the United States Bankruptcy Court for the Southern District of

12

Florida (the "DM Bankruptcy"). At the time, it had a multi-million dollar judgment entered against it and wanted to avail itself of the bankruptcy code in order to come up with a plan for its operation going forward without having its assets dissipated outside of an organized format. Part of every bankruptcy proceeding is the automatic stay imposed by 11 U.S.C. § 362 which, among other things, "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The purpose of this automatic stay is to maintain the status quo by granting "complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected." *SEC v. Brennan*, 230 F.3d 65, 75 (2d Cir. 2000). It also provides a mechanism for centralizing "all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *Id.* (citation omitted). In the absence of such controls, we submit that by the time the bankruptcy court has the opportunity to rule upon a plan for the disposition of such assets, there may no longer be anything left.

After the appointment of a chapter 11 trustee, it became apparent that there was not going to be the ability to properly reorganize DM Records, so the trustee

13

decided to convert the DM Bankruptcy to a chapter 7 proceeding. An order to that effect was entered by the Bankruptcy Court on October 17, 2016 [Bankr. ECF No. 234]. On October 20, 2016, a chapter 7 trustee was appointed to oversee the liquidation of the assets of DM Records [Bankr. ECF No. 236]. At that point, discussions ensued with the chapter 7 trustee about what to do with the assets of DM Records. Ultimately, on June 22, 2017 the chapter 7 trustee filed a Motion to Approve Global Stipulation for Settlement [Bankr. ECF No. 336]. On September 27, 2017, the Bankruptcy Court entered an Order Approving Global Stipulation for Settlement [Bankr. ECF No. 353]. Pursuant to that Order, the chapter 7 trustee assigned the songs at issue in this class action to Watson Music Group, LLC on or about October 23, 2017. Thereafter, on December 4, 2017, Watson Music Group, LLC commenced an action for intentional copyright infringement of 279 songs against Spotify USA, Inc. in the United States District Court for the Southern District of Florida. *Watson Music Group, Inc. v. Spotify USA Inc.*, Case No. 17-cv-62374-BB (the "Florida Litigation").

During the course of a telephone scheduling conference among counsel for the parties in the Florida Litigation, counsel for Spotify USA, Inc. raised the issue that the copyright claims asserted by Watson Music may be barred due to the impending settlement of the claims in this case and Watson Music's inclusion in

14

such a class action based on the failure to have opted out of the class action on or before September 12, 2017. Among other things, the Copyright Owners claim that the automatic stay provision of the bankruptcy code prevents the dissipation of any such rights through the class certification/opt-out process and satisfies the requirement of "excusable neglect" for purposes of extending time for the Copyright Owners to object before the district court.

In this case, the class action settlement imposed, among other things, restrictions on the future rights of those works included within the class in the event that the owner of such works did not take some affirmative action during an extremely abbreviated period of time to opt-out. Namely, the holders of the copyrights who are included within the class are granting the Infringer an unlimited future license to continue to stream the very songs for which the Infringer never sought permission to stream in the first place. This imposes a negative restriction, as a matter of law, on the ownership rights going forward, which together with the monetary rights to past damages, including statutory damages, the Copyright Owners respectfully submit constitutes an improper "exercise of control over property of the estate" within the meaning of the automatic stay provision of the bankruptcy law because it was taken at a time when such assets should have been shielded by the automatic stay. 11 U.S.C. §

15

362(a)(3).

The Copyright Owners discovered only one, non-binding and factually distinguishable, appellate court decision that even comes close to addressing this point of law. *Thomas v. Blue Cross and Blue Shield Ass'n*, 333 Fed. Appx. 414 (11th Cir. May 28, 2009). In *Thomas* the insurance company (Blue Cross) had been the subject of a nationwide class action in which it was "alleged that Blue Cross cheated doctors by devising ways to delay, diminish, and deny properly requested payments based on their cost instead of medical necessity." 333 Fed. Appx. at 416. That class action settled. Independently, Blue Cross commenced a separate action against the doctor and his clinic for fraud based on allegations that he was improperly billing for a bogus treatment for Lyme disease. *Id.* The doctor and his clinic thereafter filed bankruptcy. After removal to the bankruptcy court, the doctor and his clinic counterclaimed for various claims which the appellate court determined shared the "same operative nucleus of fact" with the class action. *Id.* at 417. The insurance company moved to enjoin the counterclaim based on the settlement of the class action. *Id.* The motion was granted and the doctor and his clinic appealed to the Eleventh Circuit.

On appeal, the doctor and his clinic claimed, among other things, that the "injunction against his counterclaims should not be enforced because it violated the

automatic stay in his bankruptcy case." *Id.* at 420. He claimed that the counterclaims were "property of the estate" and therefore covered within the scope of the automatic stay. *Id.* at 421. In rejecting this argument, the Eleventh Circuit found that although the counterclaims were property of the estate, they were not stayed by the automatic stay because the counterclaims had been commenced by the debtor and therefore because they were not an action "against the debtor" they were outside the scope of the automatic stay provisions. *Id.* (citing *Martin-Trigona v. Champion Fed. Sav. & Loan, Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989)).

This case is very different because it involves the diminution of value of estate assets through a court order entered in an unrelated proceeding during the pendency of the bankruptcy proceeding, prior to the trustee having the opportunity to distribute such an asset (as was ultimately the case in the DM Records Bankruptcy). The diminution in value is caused by the fact that the class member settlement eliminated a right that the copyright holder had to determine who, if anyone, would have rights to perform the song as well as granting a future performance license to Spotify. These estate assets must be protected.[1] Indeed, in

---

[1] The cases cited by counsel for the Class Settlement Proponents are inapplicable to the present circumstances because none of them involved an asset, such as a copyright, which had value independently of a cause of action against the party named in the class action. *See Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 516 (2d Cir. 1998) (Chapter 13 debtor had standing to litigate claims that

17

one of the cases cited by counsel for the Class Settlement Proponents, the district court determined that the bankrupt debtor may not be subject to the class action settlement, but that determination is one to be made in the first instance by the court which in that case that retained jurisdiction over the settlement. *See In re Doctors Health, Inc.*, 2008 WL 8889901, at 8 (D. Md. Mar. 28, 2008). Following the holding in that case, it would have been appropriate for the district court to have determined whether the settlement would be binding upon the asset which had been an asset of the DM Records Bankruptcy during the entire period of the lawsuit through the conclusion of the opt-out period and subject to the automatic stay. No such determination was made.

In the Seventh Circuit opinion cited in *Thomas*, Judge Posner reaffirms that "the policy behind the [automatic stay] statute . . . is to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors." *Martin-Trigona*, 892 F.2d at 577.

It is improper to require the Copyright Owners to take affirmative action during the pendency of a bankruptcy proceeding in order to protect assets which are already protected as a matter of law by the automatic stay. 11 U.S.C. § 362.

were not part of the estate); *In re Santangelo*, 325 B.R. 874, 881 (M.D. Fla. Bankr. 2005) (lawsuit against Fairbanks was not covered by the automatic stay).

18

The Copyright Owners demonstrated excusable neglect sufficient to have permitted them to move before the district court to be excluded from the class covered by the settlement in this case and grant them permission to opt-out of the class created in this case because during the entire period prior to the closing of the opt-out period, the copyrights were assets of an estate governed by an automatic stay.

**2. An Appeal By Objectors Such As The Copyright Owners Is The Only Way To Protect Against An Unfair Settlement Crafted By The Class Settlement Proponents Who Now Attempt To Dismiss This Appeal**

**i. *The Class Action Settlement Enables The Infringer To Benefit From Its Intentional Infringement of Copyrights By Granting It A Future License***

The Copyright Act provides, among other things, that:

> When an individual author's ownership of a copyright . . . has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright . . . shall be given effect under this title, except as provided under title

17 U.S.C. § 201(e). "A copyright owner's right to exclude others from using his property is fundamental and beyond dispute." *The Authors Guild v. Google, Inc.*, 770 F.Supp.2d 666, 681 (S.D.N.Y. 2011). In that case, which rejected a class action settlement, the Court found that under the settlement agreement, "if

19

copyright owners sit back and do nothing, they lose their rights." *Id.* The Court further stated that "[a]bsent class members who fail to opt out will be deemed to have released their rights even as to future infringing conduct." *Id.* This is precisely the situation presented in this case, especially as to the Copyright Owners, who are going to lose substantial rights should they not be permitted to remove themselves from this settlement and/or have the final settlement overturned by this Court on appeal.

### ii. *The Settlement Fails To Address The Statutory Damages Remedy For Infringement Including Intentional, Willful Infringement Of Copyrights By The Infringer*

The Spotify Settlement Class consists of all persons or entities who own copyrights in musical compositions for which a certificate of registration was applied for or issued on or before June 29, 2017 which Spotify made available for streaming or downloading without a license. [DE 177]. Pursuant to the Copyright Clause of the United States Constitution, Congress enacted the Copyright Act, which in Title 17 U.S.C. 501 states that "[a]nyone who violates any of the exclusive rights of the copyright owner…is an infringer of the copyright." This class by definition has had its exclusive rights violated by Spotify.

Congress also enacted a penalty for violating those exclusive rights to registered copyrights, statutory damages, which the court may award "in a sum of

20

not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. 504(c)(1). Under this statute, the Court is required to award at least $750.00, yet the counsel for the Class Plaintiffs at the settlement approval hearing told the district court that "[n]o one knows" how much the class members will receive per work, and estimated that it might be $50.00 or $100.00 using "average rough math." [DE 356, at 15]. The Wixen Objectors, by contrast, estimated that the settlement may result in a "settlement payment of $3.82 per infringed song." [DE 208, p.7]. This range of potential payment is so far below the statutory minimum that it is unconscionable.

The unfairness of having approved such a low settlement is all the greater because the crux of this class action case is the claim of willful infringement, which allows for the court to increase damages to $150,000 per infringement. Willfulness is not hard to find in a case in which it is uncontested that Spotify, a sophisticated multi-national company, was year after year holding a reserve for unpaid mechanical royalties in the tens of millions per year and steadily rising. [DE 288 p. 5 Tables 1a. & 1b.]. This treasure chest of infringement profits makes it impossible for Spotify to deny that it knew for many years it was making a lot of money on unlicensed music without paying the owners their due. The existence of that reserve is a patent admission by Spotify of willful infringement on an

21

enormous scale, which is exactly what happened here, further increasing the available damages and hence the value of the infringement claims.[2]

Though full statutory damages have been questioned as being excessive in the context of extremely large numerosity class action cases, *e.g., Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13 (2d Cir. 2003), the facts here much more strongly support the use of those damages as a reasonable yardstick for reviewing settlement value. First, this class amounts to only a small fraction of the numerosity contemplated in cases like *Parker*, and, also unlike *Parker*, the wrongdoing is not just a technical violation of an administrative statute like the Cable Communications Policy Act. *Id.* Instead, the wrongdoing here is a multi-year infringement of these authors' exclusive rights, the importance of which was sufficient for the subject to be in included in the Constitution. U.S. Const. art. I, § 8, cl. 8.

---

[2] There is not any argument made that Spotify could possibly be an innocent infringer under 17 U.S.C. 504(c)(2), but even if there was such an argument to be made, the $200 minimum damages awardable after a reduction would still be more than double the highest estimate of this settlement's per work award and more than fifty times the lowest estimate [DE 356, at 15; DE 208, at 7].

## CONCLUSION

As shown above and in the documents in the record, the motion to dismiss the appeal should be denied, together with granting the Copyright Owners such other and further relief as to this Court appears just and proper.

Respectfully submitted,

/s/ Seth P. Robert

Seth P. Robert
**BROWN ROBERT LLP**
150 North Federal Highway, Suite 200
Fort Lauderdale, FL 33301
Telephone: 954.832.9400
Facsimile: 954.832.9430
E-Mail: srobert@brownrobert.com

*Attorney for Objectors-Appellants Watson Music Group, Inc, DM Records, Inc., and Kingfish Music Group, Inc.*

23

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this opposition:

(i)     Complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,171 words as counted by Microsoft Word 2010; and

(ii)    Complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 2010 and is set in Times New Roman in a size equivalent to 14 points or larger.

Dated: July 30, 2018                    /s/ Seth P. Robert
                                        Seth P. Robert

24

**CERTIFICATE OF SERVICE**

I certify that on this 30th day of July, 2018, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

<u>/s/ Seth P. Robert</u>
Seth P. Robert

25